# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Location history data from Google LLC generated from
mobile devices.  See Attachment A.

Case No. **19-898M(NJ)**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Location history data from Google LLC generated from mobile devices.  See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

�)■ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:  18: 844(i) - Arson

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Thomas Greenwich, ATF
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: *august 15, 2019*

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

Honorable Nancy Joseph     U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Thomas J. Greenwich, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a warrant to search information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered in Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a warrant under Title 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government the information further described in Attachment B.I. The government will then review that information and seize the information that is further described in Attachment B.II.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since May 2018. As part of my professional experience, I have participated in State and Federal investigations involving the illegal possession of firearms and narcotics. Previously, I was employed by the Federal Air Marshal Service with my last Field Office being located in Chicago, Illinois for approximately 9 years. I worked as a police officer in Cook County, Illinois and Glen Ellyn, Illinois prior to my time as a Federal Air Marshal. I earned a Masters of Arts Degree in Intelligence Studies with Emphasis in Terrorism from the American Military University in 2013. I also received both a Bachelor's Degree with honors in Criminal Justice from the University of Phoenix in 2010. I have participated in the service of state search and seizure warrants and have seized or assisted in seizing contraband, including firearms,

ammunition, documentary evidence and contraband. I further state that I am a federal agent as delineated in Title 18 U.S.C § 3051.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 844(i) (maliciously damaging or destroying by means of fire or explosive any building used in interstate commerce) has been committed by an Unknown Suspect. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." Title 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

6. Based on my training and experience, I know that cellular devices, such as mobile telephones, are widely-used wireless devices that enable their users to send and receive wire and/or electronic communications using the networks provided by cellular service providers. In order to send or receive communications, cellular devices connect to radio antennas that are part of the cellular network called "cell sites," which can be mounted on towers, buildings, or other infrastructure. Cell sites provide service to specific geographic areas, although the service area

2

of a given cell site will depend on factors including the distance between towers. As a result, information about what cell site a cellular device connected to at a specific time can provide the basis for an inference about the general geographic location of the device at that point.

7. Based on my training and experience, I also know that many cellular devices such as mobile telephones have the capability to connect to wireless Internet ("Wi-Fi") access points if a user enables Wi-Fi connectivity. Wi-Fi access points, such as those created through the use of a router and offered in places such as homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the Wi-Fi network. In general, devices with Wi-Fi capability routinely scan their environment to determine what Wi-Fi access points are within range and will display the names of networks within range under the device's Wi-Fi settings.

8. Based on my training and experience, I also know that many cellular devices feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a mobile device and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a mobile device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by mobile devices within the Bluetooth device's transmission range, to which it might connect.

9. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the phone can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the app's operation.

3

10.     Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

11.     In addition, based on my training and experience, I know that Google offers numerous online-based services, including email (Gmail), navigation (Google Maps), search engine (Google), online file storage (including Google Drive, Google Photos, and Youtube), messaging (Google Hangouts and Google Allo), and video calling (Google Duo). Some services, such as Gmail, online file storage, and messaging, require the user to sign in to the service using their Google account. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address. Other services, such as Google Maps and Youtube, can be used while signed in to a Google account, although some aspects of these services can be used even without being signed in to a Google account.

12.     In addition, based on my training and experience, I know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be synced across the various devices on which they may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices.

4

13.     Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, phones that do not run the Android operating system, such as Apple devices.

14.     Based on my training and experience, I know that Google collects and retains location data from devices running the Android operating system when the user has enabled Google location services. Google then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. In addition, I know that Google collects and retains data from non-Android devices that run Google apps if the user has enabled location sharing with Google. Google typically associates the collected location information with the Google account associated with the Android device and/or that is signed in via the relevant Google app. The location information collected by Google is derived from sources including GPS data, information about the cell sites within range of the mobile device, and information about Wi-Fi access points and Bluetooth beacons within range of the mobile device.

15.     Based on my training and experience, I also know that Google collects and retains information about the user's location if the user has enabled Google to track web and app activity. According to Google, when this setting is enabled, Google saves information including the user's location and Internet Protocol address at the time they engage in certain Internet- and app- based activity and associates this information with the Google account associated with the Android device and/or that is signed in with the relevant Google app.

5

16.     Location data, such as the location data in the possession of Google, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected via the use of Google products as described above, mobile devices that were in a particular geographic area during a particular time frame and to determine which Google accounts those devices are associated with. Among other things, this information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation.

17.     Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

18.     Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other

6

log files that reflect usage of the account. In addition, Google often has records of the Internet

Protocol address ("IP address") used to register the account and the IP addresses associated with

particular logins to the account. Because every device that connects to the Internet must use an

IP address, IP address information can help to identify which computers or other devices were

used to access the account.

## PROBABLE CAUSE

### Fire at 2320 W. Layton Ave. Milwaukee, WI

19.     Milwaukee Police Department (MPD) executed a warrant at 4047 N. 7th St. on June

07, 2018, for which both John P. HUNT and Shanitta Y. RANSOM were listed as suspects. The

warrant was served and HUNT and RANSOM were charged with several drug- and gun-related

offenses (18CF002891, 18CF002892). A large amount of narcotics and several firearms were

recovered from the residence during the execution of the warrant. Allen M. SCHICKER was

present at the time of the arrest. HUNT and RANSOM were arrested on scene, and SCHICKER

was released at the time of the MPD warrant execution.

20.     During interviews with HUNT on May 09 and 23, 2019, HUNT told ATF Special

Agents that he had instructed SCHICKER to purchase a RUGER model LCP .380 Caliber pistol,

bearing serial number 372074112, from Cabela's in Richfield, WI. This firearm was one of three

recovered from the home on 7th Street, for which HUNT was charged by the State of Wisconsin

with being a Felon in Possession of a Firearm. HUNT stated during the interviews that he had

planned with SCHICKER for SCHICKER to claim possession of the firearms so that HUNT would

not be charged. HUNT stated that he became upset and wanted to get SCHICKER in trouble when

SCHICKER never came forward to claim possession of the firearms.

7

21. John HENRICHS lives in Apartment #3 at 2320 W. Layton Ave and is the brother-in-law to Allen and Denise Schicker. During an interview with John HENRICHS, he stated that on approximately July 17-18, 2018, HENRICHS had been with SCHICKER at HUNT's residence when SCHICKER informed HUNT that he would not be working with him anymore. HENRICHS was standing in the entry doorway of the garage at HUNT's residence when this occurred. According to HENRICHS, HUNT, his girlfriend (Shanitta RANSOM), and another unknown black male got into SCHICKER's face. They attempted to intimidate SCHICKER and pressure him into not leaving. HUNT became angry and struck SCHICKER approximately three times with a closed fist to SCHICKER's face. According to HENRICHS, HUNT attempted to close the garage door on HENRICHS, and HENRICHS was able to get SCHICKER out of the garage. HENRICHS and SCHICKER immediately left the area in HENRICHS's vehicle.

22. John HENRICHS stated he saw HUNT on multiple occasions in a silver Dodge Charger and a black Chevy Tahoe or pickup truck across the street from 2320 W. Layton Ave during July of 2018, in the weeks leading up to a fire at that residence. HUNT was parked across the street from the apartment building looking for SCHICKER, according to HENRICHS. HUNT was said to be with another black male that John HENRICHS said he couldn't identify.

23. During an interview with SCHICKER on May 05, 2019, SCHICKER showed SA Greenwich several text messages from HUNT. On July 14, 2018, the telephone number matching HUNT's sent a text to SCHICKER stating, "If you don't want any smoke hide your mama."

24. Immediately following the incident at HUNT's residence between SCHICKER and HUNT, HUNT began to call and text SCHICKER at an increased rate. According to SCHICKER, HUNT began to show up at his apartment demanding that SCHICKER come out to speak with

8

HUNT. According to the SMS logs on SCHICKER's phone on July 20, 2019, HUNT sent two text messages to SCHICKER which read as follows:

> a. 4:34 pm- "See y u playing games a mf been sitting outside your house allday and a mf let u play like you wasn't there wtf my money at for my shit aj im tired of playing with you at since you wanna play lets play"
> b. 4:42 pm- "you said call you in two hours I gave you three and you still bullshitting what up"

25. On July 20, 2018, at approximately 9:00 pm, the Milwaukee Fire Department (MFD) responded to a fire at 2320 W. Layton Ave in the City of Milwaukee, Wisconsin. The property is a two story brick building containing four apartments that are used as rental property. The fire took place in apartment #2, which was being rented by SCHICKER and his sister Denise K. Schicker.

26. Upon arrival, the Milwaukee Fire Department (MFD) crew reported heavy fire coming from the lower left corner of the building (apartment #2). MFD determined that the apartment was unoccupied. MFD was able to see flames coming out of the windows to Denise Schicker's bedroom and there was evidence showing the windows had been broken. The window air conditioning unit was laying on the ground outside the window. MFD discovered that two dogs belonging to SCHICKER and his sister died due to smoke and/or fire.

27. According to MFD Captain Erdmann, Denise Schicker told him that she had been threatened by an individual repeatedly that day. This was confirmed during an interview with Denise Schicker by SA Greenwich on May 14, 2019. Captain Erdmann saw heavy charring and burning patterns, indicating a mattress to be the area of origin. MFD determined the fire to be incendiary.

28. As noted above, HENRICHS also resides at 2320 W. Layton Ave. HENRICHS responded to the fire at 2320 W. Layton Ave by spraying the fire with a garden hose at the time of

9

the fire. HENRICHS told SA Greenwich that after he first noticed the fire, he saw a silver Dodge Charger with dark tinted windows leaving the parking area, turn right onto 23rd Street, and head towards Layton Ave. HENRICHS stated he wasn't sure if the vehicle was involved. HENRICHS didn't see the driver of the vehicle or anyone else in the area at the time. John HENRICHS stated that the vehicle matched the vehicle that HUNT drives on a regular basis.

## Fire at 1168 N. 45th St. Milwaukee, WI.

29.     At approximately 12:10 am on September 25, 2018, a fire took place at 1168 N. 45th St. Milwaukee, WI. Both MFD and the Milwaukee Police Department (MPD) responded to the fire. The residence was occupied by David Mercado and Kathryn K. Schicker. 1168/1166 N. 45th St. is a duplex in the 1100 block of N. 45th St. The residence is on the east side of N. 45th St. with the front door facing west towards N. 45th St. There is a side door on the south side of the residence, close to the south east corner, that butts up against the residence's driveway.

30.     According to MPD reports, the damage to the front door was limited to the door itself and the framing around the door. MFD broke out an adjoining window next to the door when extinguishing the fire. The door that burned up was an exterior door that led to an enclosed porch area, and not the residence itself. The fire did not appear to penetrate past the two doors inside the porch area that lead to the residence proper.

31.     The side door suffered the heaviest damage. MFD reported that when they arrived, the side door itself and the metal security door were open. The fire had completely burned up the exterior door and then penetrated into the rear stairwell of the residence. Law enforcement observed charring along the door frame and walls. No fire breached the interior living areas of the residence.

10

32. According to the Fire Investigation Unit with MFD, fires were located at both the front and rear entrances, with a strong odor of accelerant used. The accelerant was unable to be located. There are burn patterns further indicating that accelerant was used. The owner of the property in the lower unit was not home at the time of the fire. The upper-unit occupant was home and was able to escape without injury.

33. Upper-unit residents stated to police that they believe they know who started the fire but didn't see anyone. The fire was deemed an arson. Property damage was estimated at $10,000.

34. On May 21, 2019, SA Greenwich interviewed Kathleen McCauley, who resides at 11XX N. 45th St. McCauley stated that she lives in the first floor residence at 11XX N. 45th St. At approximately 12:30-01:00 am on September 25, 2018, she awoke to the sound of "kids' noises" coming from the area near her neighbors (1168 N. 45th St., *i.e.*, Kathryn Schicker's residence). McCauley stated that she heard a "poof" then a "pop" explosion sound. She got out of bed and looked out the front window. She saw 3 to 4 young males in dark clothing running Westbound on Juneau Ave., away from the area. McCauley stated that she didn't see or hear any vehicles at the time.

35. On May 21, 2019, SA Greenwich interviewed Kathryn Schicker. Kathryn Schicker stated that she knew her son "A.J." (Allen SCHICKER) worked with HUNT and that she had picked up SCHICKER from HUNT's residence on 7th Street in the past. Kathryn Schicker stated that she had heard that HUNT wanted SCHICKER to take the blame for drugs and weapons found at HUNT's house during the execution of a search warrant in June of 2018. Kathryn Schicker stated that she thinks HUNT started the fire because SCHICKER reported to her that he received a text message saying that she was next, after the fire at Denise Schicker's residence on July 20,

11

2018. Kathryn Schicker said that HUNT knew where she lived because he came with SCHICKER to fix a flat tire on David Mercado's car earlier in the year.

36.     Kathryn Schicker stated that at approximately 12:00 am on September 25, 2018, she was asleep in bed with her live-in boyfriend (David Mercado) at 1168 N. 45th St., when she smelled smoke filling up in the house. 1166 and 1168 N. 45th are located in the same structure. 1166 is the first floor of the residence while 1168 is on the second floor. She was unsure of the color of the smoke because of the darkness but could tell that it was coming from the first floor.

37.     Kathryn Schicker stated that when they exited the building, they went down the front stairs and through a screened-in porch that had all the windows closed. Within the front porch, Schicker saw that the mail boxes for 1166 and 1168 were both on fire. The fire caused damage to the doors and their frames. Schicker stated that there was a wooden front door to the front porch that is always locked. Only the landlord and Kathryn Schicker had keys to unlock the porch entry door.

38.     Kathryn Schicker stated that as they were waiting for MFD outside, she could see that the rear entrance was on fire as well. Kathryn Schicker described the rear entrance as a stairway that allowed access to the basement, first floor apartment, second floor apartment, and the attic. Kathryn Schicker stated that nothing is stored in this stairway and the floor is made of linoleum tiling. Kathryn Schicker suspects that the fire didn't continue into her apartment because they had a steel pre-hung door to their apartment. Kathryn Schicker stated that only she and the landlord had keys to open the rear door, and it is normally locked.

12

## CONCLUSION

34. Based on the forgoing, there is probable cause to believe that unknown suspects set incendiary fires, in violation of 18 U.S.C. § 844(i), at 2320 W. Layton Ave. on July 20, 2018, and at 1168 N. 45th Street on September 25, 2018.

35. I further submit that there is probable cause to search information in the possession of Google relating to what devices were in the Target Locations described in Attachment A during the time period described in Attachment A, as well as information that identifies the Google accounts with which those devices are associated, for evidence of the crimes at issue in this case. Among other things, this information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation. The Target Locations and times correspond to the fires described above.

36. In order to facilitate the manageable disclosure of and search of this information, the proposed warrant contemplates that Google will disclose the information to the government in stages rather than disclose all of the information for which the government has established probable cause to search at once. Specifically, as described in Attachment B.I:

- a. Google will be required to disclose to the government an anonymized list of devices that specifies information including the corresponding unique device ID, timestamp, coordinates, and data source, if available, of the devices that reported their location within the Target Locations described in Attachment A during the time period described in Attachment A.
- b. The government will then review this list in order to prioritize the devices about which it wishes to obtain associated information.

13

c. Google will then be required to disclose to the government the information identifying the Google account(s) for those devices about which the government further inquires.

37. I therefore request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c).

38. I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

39. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

14

**ATTACHMENT A**

**Property To Be Searched**

This warrant is directed to Google LLC and applies to:

(1) location history data, sourced from methods including GPS, wi-fi, and Bluetooth,

    generated from devices and that reported a device location within the geographical

    region bounded by the latitudinal and longitudinal coordinates, dates, and times below

    ("Initial Search Parameters"); and

(2) identifying information for Google Accounts associated with the responsive location

history data.

15

## Initial Search Parameters

### Target Location 1: Area Around 2320 W. Layton Ave.

- Date: 07/20/2018
- Time Period (including time zone): 2100 hrs (CST) - 2300 hrs (CST)

Target Location # 1: Geographical area identified as a polygon defined by the following latitude/longitude coordinates and connected by straight lines:

- Point 1: 42°57'34.24°N- 87°56'37.46°W
- Point 2: 42°57'34.47°N- 87°56'47.53°W
- Point 3: 42°57'37.45°N- 87°56'47.46°W
- Point 4: 42°57'37.64°N- 87°56'37.34°W



## Target Location 2: Area Around 1168 N. 45th Street

- Date: 09/24/2018 - 09/25/2018

- Time Period (including time zone): 2300hrs (CST) 09/24/2018 - 0100hrs (CST) 09/25/2018

- Target Location # 2: Geographical area identified as a polygon defined by the following latitude/longitude coordinates and connected by straight lines:
  - Point 1: 43°2'43.35°N-87°58'13.16°W
  - Point 2: 43°2'43.31°N-87°58'10.96°W
  - Point 3: 43°2'45.65°N-87°58'14.40°W
  - Point 4: 43°2'45.66°N-87°58'10.19°W



Case 2:19-mj-00898-NJ   Filed 12/04/19   Page 18 of 21   Document 1

## ATTACHMENT B

### Particular Items to Be Seized

### I. Information to be disclosed by Google

Google shall provide responsive data (as described in Attachment A) to the government pursuant to the following process:

1. Google shall query location history data based on the Initial Search Parameters specified in Attachment A.

2. For each location point recorded within the Initial Search Parameters, Google shall produce to the government anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List").

3. The government shall review the Anonymized List in order to prioritize the devices about which it wishes to obtain identifying information.

4. Google is required to disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each device ID about which the government inquires.

### II. Information to Be Seized

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 844(i) that were committed on or about July 20 and September 25, 2018 involving the residences at 2320 W. Layton Avenue, Milwaukee, WI, and 1168 N. 45th Street, Milwaukee, WI.

18

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Google, and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Google. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google, and they were made by Google as a regular practice; and

    b.    such records were generated by Google's electronic process or system that produces an accurate result, to wit:

    1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google in a manner to ensure that they are true duplicates of the original records; and

    2.    the process or system is regularly verified by Google, and at all times pertinent to the records certified here the process and system functioned properly and normally.

19

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____

Date                                        Signature